

**RAHUL AGARWAL**
ragarwal@fklaw.com
212.833.1132

September 26, 2025

BY ECF

The Honorable André Espinosa, U.S.M.J.
District of New Jersey
MLK Jr. Building and U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

    Re:    United States v. Treva Edwards, Cr. No. 25-266 (MCA)

Dear Judge Espinosa:

    On behalf of my client, Treva Edwards, I respectfully submit this reply brief in further support of Mr. Edwards' letter-motion seeking his release on bail, dated September 8, 2025 (D.E. 30) ("Motion" or "Mot."), and in response to the Government's September 19, 2025 opposition letter (D.E. 32) ("Opposition" or "Opp."). As set forth below, the Government's Opposition fails to establish, by clear and convincing evidence, that Mr. Edwards poses a danger to the community. We request his release on our requested set of *extremely strict* conditions, and we look forward to appearing before the Court on September 30th at 11 AM.

    First, the Government ignores the law pertaining to rebuttable presumption. As set forth in his Motion, Mr. Edwards has only the "limited" obligation in the first instance to submit evidence to rebut the presumption. He proffered several factors that have, under prior case law, successfully rebutted a presumption of detention. (*See* Mot. at 3.) The Government provided no response to that portion of our submission – the Court, therefore, should consider the presumption rebutted. After a presumption is rebutted, the Government, *at all times*, carries the burden to convince this Court, by clear and convincing evidence, that Mr. Edwards poses a danger to the community. *See, e.g.*, *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991) (noting, in a presumption case, that "[t]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government"). Accordingly, the Government's statement that "Mr. Edwards cannot rebut the presumption of detention for his human trafficking charges, namely because he poses a serious risk to the safety of the community," (Opp. at 2) does not accord with the law. Having rebutted the presumption, the burden is on the Government, not Mr. Edwards, to prove their position by clear and convincing evidence.

    Second, the Government relies on cases that are far afield from the charges against Mr. Edwards. In *United States v. Raniere*, for example, the court concluded that the defendant was a "flight risk," having fled to Mexico shortly after reports of his conduct became public,

Magistrate Judge Espinosa　　　　　　　　- 2 -　　　　　　　　September 26, 2025

"at least partly to elude law enforcement" and, after ducking the authorities for six weeks, eventually being arrested and deported to the United States. *See* Memorandum & Order at 3, 6-7, 10-11 *United States v. Raniere*, No. 1:18-cr-00204-NGG, ECF No. 46 (E.D.N.Y. June 20, 2018). Moreover, the defendant had "apparent access to extensive financial resources supplied by anonymous third parties," including "millions of dollars and access to private air travel and to a private island m Fiji." *Id.* at 12. Indeed, the defendant was such a flight risk that "round-the-clock armed guards" would have been "necessary to ensure his appearance for trial. *Id.* at 13. Mr. Edwards poses none of this risk: he has resided in the United States for decades, and he has no intention of leaving. He also has minimal resources—certainly not millions of dollars and/or access to a private island. *United States v. Patel* is similarly inapposite. Noting that the defendant had "little connection to New Jersey," Indian citizenship and a wife back in India, "a history of nonappearance," had scheduled a flight to leave the country, and possessed at least thirty "fraudulent identifications," the court found the defendant a "severe flight risk." *United States v. Patel*, No. CR 20-MJ-14001 (ZNQ), 2020 WL 1698785, at **6-7 (D.N.J. Apr. 8, 2020). Mr. Edwards is an American citizen, has strong ties to New Jersey, has never run afoul of the law, and has made no effort to hide from the charges against him. (And, to be clear, the Government has not made a flight risk argument in this matter.)

Third, the Government seeks to detain Mr. Edwards based on an allegation that he would threaten and intimidate JLHG members and Government witnesses upon his release. The Government's purported facts do not match its aggressive rhetoric. The Government cannot rely on actual evidence, e.g., a criminal past or *actual* threats to witnesses made by Mr. Edwards since his arrest. But, in order to sustain its position, the Government needs to convince this Court, by clear and convincing evidence, that the danger posed by Mr. Edwards' release arises from the alleged likelihood that he will, upon release, immediately seek to intimidate and punish JLHG members. In the place of real evidence, the Government's submission takes pieces of evidence, e.g., stray text messages or pieces of jail calls, and makes unfounded and speculative leaps in an attempt to prove that Mr. Edwards will tamper with witnesses if released. The Government's proffered evidence falls significantly short of meeting their burden of persuasion. For instance:

- The Government alleges that Mr. Edwards has "indicated an interest in witness intimidation." (Opp. at 7.) "Indicating an interest in witness intimidation" at least clarifies, at the outset, that Mr. Edwards has not actually attempted to intimidate or contact any witnesses. In support of this alleged "indication," the Government suggests: (1) that he told his wife that God was punishing JLHG members and that they needed "obedience" to win this case; and (2) he apparently discussed ongoing "work projects" with a longtime JLHG member. Neither of these alleged facts, in isolation or collectively, proves by clear and convincing evidence that Mr. Edwards *will seek* to intimidate witnesses upon his release. The Government further speculates that one of the JLHG members is "attempting to continue the forced labor scheme," Opp. at 8, which, if true, would mean that JLHG members are continuing to work, allegedly without pay, and allegedly in violation of the law, notwithstanding the fact that Mr. Edwards and his wife have been arrested. It would also mean that this JLHG member is

Magistrate Judge Espinosa     - 3 -     September 26, 2025

- committing a federal crime. This allegation is wholly unsupported, strains credulity, and is apparently based (entirely) on the Government's strained interpretation of a single jail call. This is not the type of evidence that would usually support a detention argument.

- The Government's response to individuals who are supportive of Mr. Edwards is simply to suggest that those individuals remain under his control. Under the Government's theory of detention, a witness who stands by Mr. Edwards (like Mr. Borden or like many JLHG members) or a witness who writes a supportive statement for Mr. Edwards (like his bunkmate at Essex County Correctional) must only be doing so because Mr. Edwards is exerting improper control or influence. Instead of speaking for them, the Government should allow JLHG members to speak for themselves. Mr. Borden and his wife, Tamara, were JLHG members who credit Mr. Edwards for the impact he had on their lives. His bunkmate, too, wrote a letter about the impact that Mr. Edwards has had on him during the few months they have spent together. The Court should reject the Government's attempt to wave away this evidence because it does not accord with their theory of the case. Again, the Government's position here is not probative of, and does not support, an argument for detention based on dangerousness.

- The Government states that "Edwards has already been continuing to communicate with members from jail, and would no doubt significantly ramp up his control over JLHG, including through threats and intimidation, were he released." (Opp. at 7.) Edwards has communicated with two members from jail (three, if his wife is included), on recorded phone lines, with the Government's full knowledge. He is allowed to do so. Those members (such as Mr. Borden) continue to support him. They want to talk to him – both because they value their time with him but also because they want to ensure that, while Mr. Edwards is detained, he has contact with the outside world. In support of their far-fetched allegation, the Government drops a single footnote referencing a text message sent on the day of Mr. Edwards' arrest in which a JLHG member texted others advising them that Homeland Security was at the building, that they should not return, that Mr. Edwards had been arrested, and that they should shut everyone down. (Opp. at 7 n.6.) This message suggests that JLHG members were rightfully concerned that Mr. Edwards had been arrested. It, again, reinforces the notion that many JLHG members continue to stand with Mr. Edwards. This message does not, in any way, suggest that Mr. Edwards could or would threaten and intimidate witnesses. Yet again, the Government uses a single text message out of context and makes a speculative leap in an effort to support their position.

- Finally, the Government relies on text messages or other communications allegedly made during the time that Mr. Edwards was at liberty. Those communications, while in many cases distasteful, are not probative of whether

Magistrate Judge Espinosa — 4 — September 26, 2025

Mr. Edwards would intimidate witnesses while out on bail. For instance, the Government excerpts several text messages purportedly sent by Mr. Edwards describing women, *e.g.*, "Women are the ones who will curse God and die!!!" That Mr. Edwards may have sent that type of message does not lead to the conclusion that, upon release, he will seek to coerce members of JLHG.

We conclude by reminding the Court that our proposal is a strict one. We have not asked for Mr. Edwards to be released with freedom to come and go as he pleases. Our proposal is rooted in strict conditions – if the Court grants the Motion, Mr. Edwards would be on home detention with GPS monitoring. He would not be allowed to leave his residence except under very strict conditions. And, as we have suggested, if the Court wanted to add additional conditions (to address the Government's concerns), we would be amenable to any such additions.

Respectfully submitted,

Rahul Agarwal